IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Carl Edward Harts, ) | C/A No. 0:10-1893-CMC-PJG |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| Michael J. Astrue, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

  This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 DSC et seq. The plaintiff, Carl Edward Harts ("Harts"), brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the defendant, Commissioner of Social Security ("Commissioner"), denying his claims for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). Having carefully considered the parties' submissions and the applicable law, the court concludes that the Commissioner's decision should be affirmed.

## ADMINISTRATIVE PROCEEDINGS

  In January 2006, Harts applied for SSI and DIB.[1] Harts's applications were denied initially and on reconsideration and he requested a hearing before an administrative law judge ("ALJ"). A hearing was held on April 29, 2009 at which Harts appeared and testified and was represented by

---

[1] Plaintiff has previously filed applications for DIB and SSI on multiple occasions alleging a disability onset date of July 21, 1988: (1) his March 1990 applications were denied initially, on reconsideration, and by an ALJ in a February 1, 1991 decision, and the Appeals Council denied his request for review; (2) his September 1992 applications were denied initially and Harts did not file for reconsideration; (3) his February 1994 applications were denied initially, on reconsideration, and by an ALJ in a decision dated April 12, 1995, and the Appeals Council denied his request for review; and (3) his June 1997 applications were denied initially, on reconsideration, and by an ALJ in a decision dated April 17, 1998, and he did not request Appeals Council review. (Tr. 10.)

Mario A. Pacella, Esquire. After hearing testimony from a friend of Harts and a vocational expert, the ALJ issued a decision dated June 16, 2009 finding that Harts was not disabled. (Tr. 10-20.)

Harts was born in 1949 and was 56 years old at the time of his disability onset date. (Tr. 24.) He has a ninth-grade education and past relevant work experience as a laborer at a boat company and a brick mason. (Tr. 25-26, 169, 172.) Before the ALJ, Harts alleged disability since December 3, 2005 due to a gunshot wound to the back. (Tr. 168.) He did not assert any limitations due to mental retardation.

The ALJ made the following findings and conclusions:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2008.

2. The claimant has not engaged in substantial gainful activity since December 3, 2005, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe combination of impairments: history of gunshot wound with left rib fractures and residual remaining pellets, degenerative changes of the spine and pelvis, and degenerative changes of the left AC joint and left shoulder joint (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526, 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to occasionally lift and/or carry (including upward pulling) a maximum of 50 pounds and frequently lift and/or carry (including upward pulling) a maximum of 25 pounds; with standing and/or walking (with normal breaks) for a total of about 6 hours in an eight-hour workday; with sitting (with normal breaks) for a total of about 6 hours in an eight-hour workday; and with unlimited pushing and/or pulling (including operation of hand and/or foot controls), other than as listed for lift and/or carry.

* * *

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

* * *

*PJG*

7. The claimant was born on [REDACTED], 1949, and was 56 years old, which is defined as an individual of advanced age, on the alleged disability onset date (20 CFR 404.1563 and 416.963 ).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because applying the Medical-Vocational Rules directly supports a finding of "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that he can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

* * *

11. The claimant has not been under a disability, as defined in the Social Security Act, from December 3, 2005 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 12-19.) With new counsel, Samuel H. Jefcoat, Harts filed an appeal and submitted additional evidence for consideration, which the Appeals Council admitted into the administrative record. On May 18, 2010 the Appeals Council denied Harts's request for review, making the decision of the ALJ the final action of the Commissioner. (Tr. 1-4.) This action followed.

## SOCIAL SECURITY DISABILITY GENERALLY

Under 42 U.S.C. § 423(d)(1)(A), (d)(5) and § 1382c(a)(3)(H)(i), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973). The regulations require the ALJ to consider, in sequence:

> (1) whether the claimant is engaged in substantial gainful activity;
>
> (2) whether the claimant has a "severe" impairment;
>
> (3) whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;
>
> (4) whether the claimant can perform his past relevant work; and
>
> (5) whether the claimant's impairments prevent him from doing any other kind of work.

See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. Id.

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments. Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980). The Commissioner may carry this burden by obtaining testimony from a vocational expert. Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig

v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).  Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied.  See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980).  "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589.  In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]."  Id. Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence.  Blalock, 483 F.2d at 775.

## ISSUES

Harts raises the following issues for this judicial review:

1. The Appeals Council failed to fully discuss or evaluate new evidence submitted, thereby failing to properly evaluate whether Plaintiff's impairment met the listing for mental retardation.

2. The ALJ failed to fully and fairly develop the evidence regarding Plaintiff's impairment by failing to secure Plaintiff's school records and to provide same to the consultative examiner.

3. The ALJ erred in finding Plaintiff's IQ scores to be invalid, in finding there was no evidence in the record of Plaintiff's subaverage intellectual functioning prior to age 22, and in finding Plaintiff had only a "limited education".

4. The ALJ erred in presenting a hypothetical to the vocational expert that did not include a non-exertional limitation regarding Plaintiff's low level or intellectual functioning and in finding Plaintiff has the residual functional capacity for the full range of medium work.

(Pl.'s Br., ECF No. 13.)

PJG

## DISCUSSION

### A.     Listing 12.05C

Harts essentially contends that the Commissioner's decision is not supported by substantial evidence based on additional evidence he submitted to the Appeals Council and based on prior ALJ decisions. Specifically, Harts relies on two additional exhibits that he submitted to the Appeals Council: (1) his educational records from White Hall School System and (2) a psychological evaluation administered by Dr. Robert Phillips, dated August 21, 2009. (Tr. 4, 223-25, 459-63.) Harts argues that the additional evidence and past ALJs' findings in 1995 and 1998 of a history of life-long mild mental retardation (see Tr. 61-63, 77-78) demonstrate that he met the Listing for mental retardation, Listing 12.05C.

The law provides that evidence submitted to the Appeals Council with the request for review must be considered in deciding whether to grant review " 'if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision.' " Wilkins v. Sec'y, Dep't of Health & Human Servs., 953 F.2d 93, 95-96 (4th Cir. 1991) (*en banc*) (quoting Williams v. Sullivan, 905 F.2d 214, 216 (8th Cir. 1990)). Evidence is new "if it is not duplicative or cumulative." Id. at 96. "Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome." Id. When a claimant seeks to present new evidence to the Appeals Council, he is not required to show good cause for failing to present the evidence earlier. Id. at 96 n.3; cf. 20 C.F.R. § 404.970(b).

Since the Appeals Council denied Harts's request for review, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 404.981. Moreover, the court observes that since the filing of the briefs in this matter, the United States Court of Appeals for the Fourth Circuit explicitly held in Meyer v. Astrue, 662 F.3d 700 (4th Cir. 2011), that "[t]he Appeals Council need

not explain its reasoning when denying review of an ALJ decision." Id. at 702. Accordingly, the court must "review the record as a whole, including the new evidence, in order to determine whether substantial evidence support[ed] the [Commissioner's] findings." Wilkins, 953 F.2d at 96; see also Meyer, 662 F.3d at 707 (reversing and remanding the Commissioner's decision because upon considering the whole record, including the new evidence submitted to the Appeals Council, the court could not determine whether substantial evidence supported the ALJ's denial of benefits).

As stated above, Harts argues that considering all of the evidence, the Commissioner's failure to find that he met the requirements of Listing 12.05C is not supported by substantial evidence. At Step Three of the sequential analysis, the Commissioner must determine whether the claimant meets the criteria of one of the Listings and is therefore presumptively disabled. "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria." Sullivan v. Zebley, 493 U.S. 521, 530 (1990) (emphasis added). It is not enough that the impairments have the diagnosis of a listed impairment; the claimant must also meet the criteria found in the Listing of that impairment. 20 C.F.R. §§ 404.1525(d), 416.925(d). The Commissioner compares the symptoms, signs, and laboratory findings of the impairment, as shown in the medical evidence, with the medical criteria for the listed impairment. 20 C.F.R. §§ 404.1508, 416.908. The Commissioner can also determine that the claimant's impairments are medically equivalent to a Listing, which occurs when an impairment is at least equal in severity and duration to the criteria of a Listing. 20 C.F.R. §§ 404.1526(a), 416.926(a).

To meet the criteria of the Listing for mental retardation, a claimant must satisfy two parts of the Listing: the requirements of the introductory paragraph, and one of four sets of additional criteria indicating the requisite level of severity.

> The structure of the listing for mental retardation (12.05) is different from that of the other mental disorders listings. Listing 12.05 contains an introductory paragraph

with the diagnostic description for mental retardation. It also contains four sets of criteria (paragraphs A through D). If your impairment *satisfies the diagnostic description in the introductory paragraph **and** any one of the four sets of criteria*, we will find that your impairment meets the listing.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00 (emphasis added); see also Markle v. Barnhart, 324 F.3d 182, 187 (3d Cir. 2003); Foster v. Halter, 279 F.3d 348, 354 (6th Cir. 2001); Hodges v. Barnhart, 276 F.3d 1265, 1268 (11th Cir. 2001); Hancock v. Astrue, No. 11-1001, 2012 WL 19731 (4th Cir. Jan. 5, 2012).

Section 12.05 states:

Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

Subsection C of Listing 12.05 additionally requires: "A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.05.

Here, Harts argues, based on the additional evidence submitted to the Appeals Council, that a psychological examination demonstrates that he has a valid IQ score of 70 or less and that his school records show subaverage intellectual functioning. Harts further contends that the ALJ's finding that Harts has a severe combination of impairments that precludes him from performing his past relevant work demonstrates "a physical or other mental impairment imposing an additional and significant work-related limitation of function." Id.

As an initial matter, Harts argued for the first time to the Appeals Council that he suffered from mental retardation and that he met Listing 12.05C. Harts's counsel relied on his pre-hearing brief as his opening statement to the ALJ, which stated that Harts was alleging severe impairments

of lower back pain with radiculopathy, shoulder pain, hernia, constipation, nausea/vomiting, and memory problems; and mental impairments of memory problems and risk of infection from a removed spleen. (Tr. 24, 222.) Further, Harts unequivocally stated in his pre-hearing brief that he did not meet or equal a Listing. (Tr. 222.) During the hearing, Harts did not testify or allege that he suffered from mental retardation; rather, the only mental limitation he mentioned was memory problems. (Tr. 21-56.) The Commissioner argues that since Harts did not present any claim to the ALJ that he suffered from mental retardation or met Listing 12.05C, it is improper for him to challenge the ALJ's decision on that basis; however, since this issue was raised to the Social Security Administration before the Appeals Council, out of an abundance of caution, the court will address it.[2] Cf. Mills v. Apfel, 244 F.3d 1, 8 (1st Cir. 2001) (concluding that a claimant who did not raise an issue before the ALJ or the Appeals Council had waived it).

A review of the ALJ's decision reveals that in considering whether Harts met any of the mental listings, he specifically found that Harts did not meet the first part of the introductory paragraph to Listing 12.05: significantly subaverage general intellectual functioning; nor did he exhibit the second criterion in the introductory paragraph: the deficits in adaptive functioning. (See Tr. 18.) The ALJ also found that Harts did not have "[a] valid verbal, performance, or full scale IQ of 60 through 70" as required under 12.05C. (See Tr. 17-18.)

In determining the nature and extent of functional limitations allegedly arising out of mental impairments, the Commissioner rates the severity of the condition on the following areas of adaptive

---

[2] Nonetheless, as Harts did not allege mental retardation before the ALJ and unequivocally indicated that he was not asserting that he met a Listing, the court finds Harts's argument that the ALJ erred in failing to develop the record by failing to request Harts's school records to be wholly without merit. Furthermore, the court observes that Harts was represented by counsel at his hearing before the ALJ, and the ALJ "is not required to function as the claimant's substitute counsel, but only to develop a reasonably complete record." Clark v. Shalala, 28 F.3d 828, 830-31 (8th Cir. 1994) (cited in Bell v. Charter, No. 95-1089, 1995 WL 347142, at *4 (4th Cir. 1995) (Table)).

functioning: activities of daily living; social functioning; concentration, persistence, or pace; and areas of decompensation. 20 C.F.R. §§ 404.1520a, 416.920a. Specifically, the ALJ found that Harts had no restrictions or difficulties in any of these areas. (Tr. 17.) With regard to whether Harts exhibited significantly subaverage general intellectual functioning or a valid IQ score, the ALJ observed that during testing with Dr. A. Nicholas DePace, a psychological consultative examiner, Harts "obtained a verbal IQ score of 66, a performance IQ score of 57, and a full scale IQ score of 59." (Tr. 18.) However, the ALJ agreed with Dr. DePace's conclusions that the IQ scores were not an accurate reflection of Harts's abilities based on Dr. DePace's indications that during the evaluation Harts "engaged in numerous behaviors that were strongly suggestive of him not putting forth appropriate effort," that "behavioral observations clearly indicate an attempt by the claimant to portray himself as more impaired tha[n] what he actually [was]," and that Harts "engaged in behavior consistent with malingering", and based on the fact that Dr. DePace diagnosed Harts with "clear exaggeration of cognitive limitations." (Tr. 18.) Accordingly, the ALJ found the IQ scores submitted by Dr. DePace were not valid.

Furthermore, as stated above, the ALJ found, and the record supports, that Harts failed to demonstrate deficits in adaptive functioning. In reaching this finding the ALJ noted Harts's varied activities of daily living and social functioning, including "living most of the time on his own, some driving, fixing small meals, some cooking such as preparing grits or using a crockpot, watching television, independence with dressing, sometimes having difficulty with dizziness while bathing, sometimes walking in the yard, socializing with a couple of friends, and managing his own money." (Tr. 14; see also Tr. 17-18.) The ALJ also observed that Harts's prior work activity included semi-

skilled work.[3]  Moreover, the record does not reveal any episodes of decompensation and as stated above, Harts did not testify at the hearing that any mental issues imposed a difficulty for him, other than mentioning some memory problems.

As stated above, in support of his argument that the ALJ's decision is not supported by substantial evidence, Harts relies on a new psychological examination and school records, which were submitted to the Appeals Council, as well as two ALJ decisions from 1995 and 1998, which include findings that Harts's impairments include a history of life-long mild mental retardation. With regard to the prior ALJ decisions, as pointed out by the Commissioner, these decisions were over ten years old at the time of this decision and there is no indication in the record that the prior ALJs were presented with evidence that Harts was malingering, rendering their evidentiary value minimal.  See, e.g., Rucker v. Chater, 92 F.3d 492, 495 (7th Cir. 1996) (stating that where a claimant had two applications, four years apart, different conclusions about the claimant's RFC were "entirely plausible").  The school records submitted to the Appeals Council essentially reflect Harts's grades and attendance from first through eighth grades.  While the record may reflect that Harts received low marks in his classes as he progressed, there is no indication in the record that Harts was enrolled in special education classes or underwent any IQ testing during that time.  Further, Dr. DePace's evaluation reflected that Harts only completed the eighth grade, classified himself as a slow learner, and reported very poor grades, including failing the second and fourth grades.  (Tr. 426.)  Thus, it is unclear how the additional school records render the ALJ's decision unsupported by substantial evidence.

---

[3] The Commissioner mentions that Luckey v. Department of Health and Human Services, 890 F.2d 666, 669 (4th Cir. 1989), states that the Commissioner "may not rely upon previous work history to prove non-disability where the section 12.05(C) criteria are met."  However, unlike Luckey, in this case Harts has not met the requirements of Listing 12.05C, and regardless, this was only one factor considered by the ALJ.

The psychological examination that Harts submitted to the Appeals Council was completed approximately two months after the ALJ's decision and indicated that Harts obtained a verbal IQ score of 70, a performance IQ score of 62, and a full scale IQ score of 63.  (Tr. 459-63.)  Notwithstanding this evidence, Harts has failed to demonstrate that the ALJ's determination that Harts did not meet a Listing is unsupported by substantial evidence.  Even accepting the validity of the results of this examination, the new IQ scores address only one of the reasons the ALJ found Harts did not meet Listing 12.05C.  None of the additional evidence submitted to the Appeals Council renders the ALJ's determination that Harts did not exhibit deficits in adaptive functioning, which is the second criterion in the introductory paragraph of 12.05, unsupported.  See Wagner v. Apfel, 201 F.3d 439, 1999 WL 1037573, at *3 (4th Cir. 1999) (Table) (holding that the Appeals Council did not err in declining review in part because an evaluation submitted to the Appeals Council was performed after the ALJ's decision denying disability benefits) (citing Macri v. Chater, 93 F.3d 540 (9th Cir. 1996)).

**B.    Residual Functional Capacity**

Finally, Harts argues that the ALJ erred in failing to include any nonexertional impairments in his residual functional capacity ("RFC") assessment based on his low level of intellectual functioning.  In this case, the ALJ found that Harts retained the residual functional capacity to

> occasionally lift and/or carry (including upward pulling) a maximum of 50 pounds and frequently lift and/or carry (including upward pulling) a maximum of 25 pounds; with standing and/or walking (with normal breaks) for a total of about 6 hours in an eight-hour workday; with sitting (with normal breaks) for a total of about 6 hours in an eight-hour workday; and with unlimited pushing and/or pulling (including operation of hand and/or foot controls), other than as listed for lift and/or carry.

(Tr. 13.)  Upon review of the record and the parties' arguments, the ALJ incorporated every credible impairment and limitation in his RFC analysis.  Further, Harts has failed to demonstrate that the

psychological examination and school records submitted to the Appeals Council show any functional limitations. Accordingly, the court finds that remand is not warranted on this issue.

## RECOMMENDATION

For the foregoing reasons, the court finds that Harts has not shown that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard. See Craig, 76 F.3d at 589; see also 42 U.S.C. § 405(g); Coffman, 829 F.2d at 517. The court therefore recommends that the Commissioner's decision be affirmed.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

January 30, 2012
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).